1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   THE JUMPITZ CORPORATION, a              CASE NO. 09CV1063-MMA (WVG)
     California corporation,
12                                            **ORDER GRANTING IN PART**
                                 Plaintiff,   **AND DENYING IN PART**
13                                            **PLAINTIFF AND COUNTER-**
            vs.                               **DEFENDANT THE JUMPITZ**
14                                            **CORPORATION'S MOTION FOR**
                                              **SUMMARY JUDGMENT**
15   VIACOM INTERNATIONAL, INC., a
     Delaware corporation, and MTV
16   NETWORKS, INC., a Delaware corporation,  [Doc. No. 55]

17                               Defendants.

18   VIACOM INTERNATIONAL, INC., a
     Delaware corporation,
19
                           Counter-claimant,
20          vs.
     THE JUMPITZ CORPORATION, a
21   California corporation,

22                          Counter-defendant.

23          Pending before the Court is Plaintiff and Counter-Defendant The Jumpitz Corporation's ("The

24   Jumpitz") motion for summary judgment on Defendant and Counter-Claimant Viacom International,

25   Inc.'s ("Viacom") counterclaim. (Doc. No. 55.) On August 9, 2010, the Court held a hearing on The

26   Jumpitz's motion. Attorney Fletcher Paddison argued on behalf of The Jumpitz, and Attorney Robert

27   Klieger argued on behalf of Viacom. At the conclusion of the hearing, the Court took the matter under

28   submission pursuant to Civil Local Rule 7.1(d)(1). Having considered the briefs and the arguments

of counsel, and for the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** The Jumpitz's motion for summary judgment.

### **Background**[1]

The Jumpitz is a San Diego-based performance group that performs live song and dance for preschool-aged children. Plaintiff first used The Jumpitz mark in the marketplace in December 2007 when it marketed its first DVD. In addition to live performances, The Jumpitz also market themselves via their website, www.jumpitz.com.

On or about May 1, 2009, MTV Networks began marketing its own live-action children's program entitled "The JumpArounds." That same day, MTV Networks also launched a website promoting The JumpArounds, and began promoting The JumpArounds on its Nickelodeon and NOGGIN web and mobile sites. In July 2009, MTV changed the name of the program to "The Fresh Beat Band."

On May 15, 2009, Plaintiff filed the instant complaint alleging infringement of its trademark, as well as infringement of its trade dress. (Doc. No. 1.) On August 21, 2009, Defendants answered the complaint, and Viacom alleged counterclaims against The Jumpitz for trade dress infringement. (Doc. No. 11.) Specifically, Viacom alleged that The Jumpitz had infringed Viacom's trade dress by: (1) using an orange bar across the top of its website; (2) using a graphic that resembles the Nickelodeon "splat;" (3) referencing slime on its website, which Viacom alleged to be strongly suggestive of an association with Nickelodeon; (4) using a color scheme of muted colors for its website (specifically referencing similarities between the Jumpitz's site and the site for Spongebob Squarepants); (5) having a similar group composition to The JumpArounds/The Fresh Beat Band; (6) utilizing shirts with a similar pattern and cut to "Blues Clues" to clothe its characters; and (7) creating a website with a color scheme and look similar to those of Nickelodeon's programs and websites.

On March 29, 2010, Defendants moved for summary judgment on all claims. (Doc. No. 37.)

---

[1]A more detailed background of the facts of this case can be found in the Court's May 13, 2010 Order granting in part and denying in part Defendants' motion for summary judgment. (Doc. No. 51.)

To the extent that any fact appears in this section, the Court finds it not reasonably in dispute and supported by admissible evidence. Moreover, to the extent that any evidentiary fact is subject to an objection, its appearance in this order indicates that the Court has overruled the objection and found the evidence admissible.

1   On May 13, 2010, the Court issued an order granting in part and denying in part Defendants' motion

2   for summary judgment. (Doc. No. 51.) On July 12, 2010, The Jumpitz moved for summary judgment

3   on all of Viacom's counterclaims. (Doc. No. 55.)  Viacom opposes the motion. (Doc. No. 57.)

4   **Legal Standard**

5          A moving party is entitled to summary judgment only if the moving party can demonstrate that

6   (1) "there is no genuine issue as to any material fact," and (2) it is "entitled to judgment as a matter

7   of law." Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of

8   fact is one that raises a question that a trier of fact must answer to determine the rights of the parties

9   under the substantive law that applies. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

10  dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the

11  nonmoving party." *Id.* at 248. The initial burden is on the moving party to show that both prongs are

12  satisfied. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by

13  presenting evidence that negates an essential element of the nonmoving party's case; or (2) by

14  demonstrating that the nonmoving party failed to make a showing sufficient to establish an element

15  essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23.

16  If the moving party fails to discharge this initial burden, summary judgment must be denied, and the

17  court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

18  159–60 (1970).

19         If the moving party meets this initial burden, the nonmoving party cannot defeat summary

20  judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."

21  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson*, 477 U.S.

22  at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position

23  is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by [his] own

24  affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate

25  'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (*quoting* Fed.

26  R. Civ. P. 56(e)). The inferences to be drawn from the facts must be viewed in a light most favorable

27  to the nonmoving party. *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002).

28  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from

the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### **Analysis**

Although Viacom identified a number of elements of its purported trade dress in its counterclaim, Viacom concedes in its opposition papers that it is no longer pursuing most of those elements. Thus, Viacom's trade dress infringement claim is now premised on just two elements: (1) Nickelodeon's "splat;" and (2) Nickelodeon's "visual system" – which Viacom asserts is comprised of a particular color palette (distinctive shades of orange, green, and cyan blue) and design ( "soft" and "whimsical" geometric shapes as mortise or framing devices).

A party claiming infringement must demonstrate that it has a valid, protectable interest in its marks, and  that the allegedly infringing use of the same or a similar mark is likely to cause confusion as to source, affiliation, or sponsorship among consumers. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). Trade dress is "the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001).

1.      The Nickelodeon splat[2]

First, Viacom asserts that The Jumpitz's use of a shooting star graphic on its website is sufficiently similar to the Nickelodeon splat, such that it is likely to create confusion amongst consumers.

*a.      Protectable mark*

Registration of the mark with the U.S. Patent and Trademark Office ("USPTO") constitutes

---

[2]In its opposition, Viacom references and presents evidence of a number of old logos used by Nickelodeon. Nickelodeon contends that these marks, many of which were in use during the 1980s and 1990s, viewed together with the current iteration of the splat, render the similarity of The Jumpitz graphic even more apparent. As an initial matter, these additional, outdated marks are not relevant to the inquiry because the Court must consider the marks "as they appear in the marketplace." *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143 (9th Cir. 1999). Accordingly, the Court cannot consider some "combination" of these marks to determine likelihood of confusion because they do not appear in the marketplace that way. Second, some of these marks, especially those that bear the closest resemblance to The Jumpitz's shooting star graphic, have not been in the marketplace for many years. Thus, Viacom cannot demonstrate a likelihood of confusion based on The Jumpitz's use of a graphic that is arguably similar to those. Accordingly, the Court declines to consider the additional logos in assessing the merits of Viacom's claims.

prima facie evidence of the validity of the registered mark and of the owner's exclusive right to use the mark on the goods and services specified in the registration. *See* 15 U.S.C. §§ 1057(b); 1115(a). It is undisputed that Viacom has registered one version of the Nickelodeon splat with the USPTO. It is also undisputed that Viacom states in its application that "color is not claimed as a feature of the mark." Viacom claims a protectable interest in a variety of splats, as well as all splats that appear in the color orange. Thus, while registration is prima facie evidence of validity, it is not dispositive of the issue.

Even where a particular mark is not registered, it can still be a protectable interest if it is "distinctive." A mark is distinctive if it is capable of distinguishing one's goods and services from those of another. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). Viacom's mark for Nickelodeon is inherently distinctive. The splat has no connection to the product Nickelodeon offers, i.e. children's programming. Moreover, it is undisputed that the splat has repeatedly appeared in the market in the color orange for many years. Because the orange Nickelodeon splat is inherently distinctive, the Court finds that it is entitled to protection.

### b. Likelihood of Confusion

In *AMF, Inc. v. Sleekcraft Boats*, the Ninth Circuit set forth several factors for a court to consider in determining whether confusion between related goods is likely: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." 599 F.2d 341, 348 (9th Cir. 1979). A court, however, should not rigidly weigh these factors in determining whether there is a likelihood of confusion. *Dreamwerks Production Group v. SKG Studios*, 142 F.3d 1127, 1129 (9th Cir. 1998). Moreover, the weight of factors depends on the context of the case. *Id.*

A court should grant summary judgment in a trademark infringement case such as this one, only if "no genuine issue" exists regarding likelihood of confusion. *Thane Int'l v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002). The Ninth Circuit has cautioned that "district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record."

1  *Id.* (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001); *Interstellar*

2  *Starship Svcs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999)).

3  <u>1.    Strength of the mark</u>

4  The strength of the mark is determined by how distinctive it is. *M2 Software, Inc. v. Madacy*

5  *Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005). "Certain marks are deemed inherently distinctive, and

6  afforded the greatest protection, because their intrinsic nature serves to identify a particular source of

7  a product." *Official Airline Guides v. Goss*, 6 F.3d 1385, 1390 (9th Cir. 1993). As already noted, the

8  Nickelodeon splat is a very strong and distinctive mark. It has no logical connection to the services

9  offered by Nickelodeon, children's programming, which makes it entitled to the greatest protection.

10  <u>2.    Similarity of the marks</u>

11  "The similarity of marks 'has always been considered a critical question in the likelihood-of-

12  confusion analysis." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1082 (9th Cir. 2005) (citing

13  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000)). In assessing the similarity

14  of the marks, the court must look at the sight, sound, and meaning of the marks. *Fruit of the Loom,*

15  *Inc. v. Girouard*, 994 F.2d 1359, 1363 (9th Cir. 1993). Moreover, "the marks must be considered in

16  their entirety and as they appear in the marketplace." *Official Airline Guides*, *supra*, 6 F.3d at 1392.

17  Here, The Jumpitz contend that the shooting star they use is in no way similar to the

18  Nickelodeon splat. The Jumpitz contend that the Court can decide the matter simply by looking at The

19  Jumpitz's graphic in its static form. The Court, however, is obligated to the consider marks in their

20  entirety and "as they appear in the marketplace." *Id.* Here, The Jumpitz graphic is animated, and must

21  be viewed in that form to determine whether the graphics are similar such that there is a likelihood of

22  confusion.

23  On The Jumpitz's website, an arcing line draws across the top of the page from right to left.

24  Once the line stops moving, a star splatters at the end of the line. First, stars do not typically splat like

25  paint or some other substances might. The fact that the star appears splattered and is animated with

26  a splattering effect, makes it very similar to the nickelodeon splatter. In addition, the orange color of

27  the shooting star also makes it similar to the Nickelodeon splat. *See GoTo.com, Inc.*, *supra*, 202 F.3d

28  at 1207 (noting that the identical colors of the graphics created the confusion). A different color may

have been sufficient to distinguish the marks, but use of the same color is troubling. In arguing that the graphics lack similarity, The Jumpitz contend that the shooting star is a secondary graphic, while the Nickelodeon splat is a primary graphic. Again, looking at the graphic in its static form, this argument might have merit. The animation, however, makes the graphic appear more as a primary than secondary graphic. Finally, The Jumpitz contend that the graphics are not similar because the Nickelodeon splat always appears with "Nickelodeon" printed within the splat. But this argument lacks merit because there is sufficient evidence in the record that the splat also appears in the marketplace without the "Nickelodeon" name printed within it. Accordingly, because the marks are similar, the Court finds this factor weighs in favor of Viacom.

3.    Intent to Deceive

The Jumpitz contend that Viacom has produced no evidence that the Jumpitz intended to reap the benefit of Viacom's goodwill. But Viacom has produced evidence that is more than sufficient to create a triable issue of fact. First, Viacom provides an email by The Jumpitz's CEO, Laurie Jabbar, in which she instructs one of her employees to check out the various Nickelodeon websites and incorporate some of the elements from those sites into The Jumpitz's website. (*Klieger Decl.*, Ex. L.) Viacom also provides another email in which an employee of The Jumpitz instructs another employee that she should be "keeping us abreast of new, potentially competitive programming. You know, spy stuff . . ." (*Id.,* Ex. E.) Finally, there is evidence that The Jumpitz's website designer offered several different layouts of the website, which included the shooting star graphic in colors other than orange. (*Id.*, Ex. K.) The examples also featured a whitened center in the star, which could have also minimized the similarities to the Nickelodeon splat. Despite these alternative designs, the graphic that appears on the website is solid orange, just like the Nickelodeon splat. This evidence is probative of the intent to deceive, such that the factor weighs in favor of Viacom.

4.    Actual Confusion

It is undisputed that there has been no evidence of actual confusion based on The Jumpitz's use of the shooting star graphic. Viacom responds that this not noteworthy. "Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, *supra*, 599 F.2d at 352 (citing *Plough, Inc. v. Kreis Laboratories*, 314 F.2d 635, 639 (9th Cir. 1963)).

- 7 -

In *Sleekcraft*, the Ninth Circuit noted that proving actual confusion is difficult because such evidence is usually unclear or insubstantial. *Id.* Accordingly, "the failure to prove instances of actual confusion is not dispositive." *Id.* at 353. Here, finding evidence of actual confusion is an even more difficult task given the transient use of the web. Thus, while this factor weighs in favor of The Jumpitz, the Court gives it little weight.

### 5.     Proximity of the Goods

One of the factors the court should consider is the relatedness of the products and services offered. *Brookfield Communs.*, 174 F.3d at 1056–57. This factor is important because "[r]elated goods are more likely than non-related goods to confuse the public as to the producer of the goods." *Official Airline Guides*, *supra*, 6 F.3d at 1392. In the Court's prior order, the Court determined that the products are highly related. Here, the proximity of the goods is even close because the graphics appear in the same medium—the parties' respective websites. Thus, this factor weighs in favor of Viacom.

### 6.     Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, *supra,* 599 F.2d at 353. Although the Court noted in its prior order that the marketing channels used to market the respective shows are different, the Court notes that Viacom's claim is based on website content. Thus, the marketing channels are aligned even more than when the Court analyzed this factor in the context of The Jumpitz's claims. Accordingly, this element weighs in favor of Viacom.

### 7.     Degree of Care

As noted in the Court's prior order, parents are likely to exercise a higher degree of care in determining what their child may acceptably view because of parents' protective nature. The fact that parents typically exercise a high degree of care reduces the risk for a likelihood of confusion. Thus, this factor weighs in favor of The Jumpitz.

### 8.     Likelihood of Expansion

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, *supra*, 599 F.2d at 354. Where parties already compete to a significant extent, the likelihood of expansion factor is considered relatively

1  unimportant. *GoTo.com, supra*, 202 F.3d at 1210. Here, both parties compete in their

2  products—children's entertainment programming—and do so via similar channels, which include the

3  web as a predominate source of marketing and advertising. Thus, the parties are already competing

4  to a significant extent, rendering the analysis of this factor relatively unimportant.

5          On balance, the *Sleekcraft* factors weigh in favor of Viacom, such that the merits of Viacom's

6  claim should be decided by a jury. Accordingly, the Court **DENIES** The Jumpitz's motion for

7  summary judgment on its use of the shooting star graphic.

8          2.      Viacom's "Visual System"

9          Viacom claims that its color scheme, combined with the particular shapes it uses in its

10 marketing and advertisements, comprise a "distinctive visual system" that is entitled to protection.[3]

11 In order to establish a protectable interest in a trade dress, Viacom must demonstrate that: (1) the trade

12 dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (2) there is a

13 substantial likelihood of confusion. *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145

14 (9th Cir. 2009).

15          a.      *Functionality*

16          A plaintiff is entitled to protection of its trade dress only if the trade dress is nonfunctional. *See*

17 15 U.S.C. § 1125(a)(3). The Supreme Court has explained, "A product feature is functional and cannot

18 serve as a trademark if the product feature is essential to the use or purpose of the article or if it affects

19 the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a

20 significant, non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S.

21 159, 165 (1995). "This doctrine prevents trademark law, which seeks to promote competition by

22 protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer

23 to control a useful product feature." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d

24 1042, 1048 (9th Cir. 1998). Functionality is viewed as a question of fact. *Fuddruckers, Inc. v. Doc's*

25 *B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987). The person who asserts trade dress protection

26 has the burden of proving that the matter sought to be protected is not functional. 15 U.S.C. §

27

28          [3]Viacom defines a visual system as "the visual expression of a brand, including through color,
   imagery, and typography, so as to promote a consistent, coherent, and distinctive brand image."
   (*Viacom Opp.* at 1 n.1.)

1125(a)(3). "This burden of proof gives force to the well-established rule that trade dress protection may not be claimed for product features that are functional." *Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 29 (2001).

The Jumpitz assert that Viacom's visual system is functional, that is, it is used because it is "aesthetically pleasing to children, not to denote product source." (*Mot. for Summ. J.* at 6:13–17.) "If a design's aesthetic value lies in its ability to confer a significant benefit that cannot practically be duplicated by the use of alternative designs, then the design is functional." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 170 (1995) (internal quotations omitted). "The ultimate test of aesthetic functionality . . . is whether the recognition of trademark rights would significantly hinder competition." *Id.*

In support of their position that the "visual system" is functional, The Jumpitz refer the Court to the report of Peter Schube, Viacom's expert. (*The Jumpitz's NOL*, Ex. 18.) In assessing The Jumpitz's asserted trade dress claim, Mr. Schube opined that all of the elements identified in The Jumpitz's alleged trade dress, either alone or in combination with one another, were functional and not unique to The Jumpitz. One of the elements Mr. Schube discusses is the use of strong colors in children's programming. Throughout the report, Mr. Schube discusses how the use of strong colors is important so children can distinguish characters.

Viacom fails to offer any evidence that rebuts The Jumpitz's argument that the elements of Viacom's "visual system" are aesthetically functional. Nor does Viacom offer evidence to demonstrate that its "visual system" is not functional. Viacom appears to rely on the declaration of Richard Hicks, creative director for Nickelodeon. Mr. Hicks's declaration, however, mostly addresses the second element of a protectable interest, that is whether Viacom's "visual system" has acquired secondary meaning. Some of Mr. Hicks's comments, however, are useful in assessing the functionality of Viacom's "visual system." Mr. Hicks admits, "A significant portion of Nickelodeon's audience is comprised of young children, many of whom are not yet of reading age and therefore identify brands not by words but instead by visual elements, including colors and shapes." (*Hicks Decl.* at ¶ 16.) Mr. Hicks also states, "Colors are among the first things children are able to distinguish . . . ." (*Id.* at ¶ 17.) This evidence demonstrates that the use of colors is important to Viacom because of the limited

cognitive abilities of children, the intended audience, not to distinguish its brand from other competitors in the market. Furthermore, there is no evidence in the record to demonstrate that Viacom's use of "simple yet whimsical shapes" is Viacom's attempt at distinguishing the Nickelodeon brand from other competitors. Rather, it appears to be Viacom's attempt to appeal to children, who are inherently less adept at cognitive functioning. Thus, the Court is not convinced that Viacom has adequately carried its burden of demonstrating that its "visual system" is non-functional.

### b.   Secondary Meaning

Even if the Court resolved the functional issue in Viacom's favor, Viacom has failed to demonstrate that the "visual system" has acquired secondary meaning. To succeed on a trade dress infringement based on product design, the plaintiff must show that its design has attained secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 214 (2000). A design has acquired secondary meaning if it has created "a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." *Art Attacks Ink, supra*, 581 F.3d 1138, 1145 (9th Cir. 2009). Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant. *Id.*

Mr. Hicks asserts that "the distinctive combination of these elements is quintessential Nickelodeon." (*Hicks Decl.* at ¶ 19.) But there is no evidence in the record to support this assertion. As an initial matter, the Ninth Circuit affords little or no weight to the opinions of those connected with the business that owns the trademark or trade dress. *See Filipino Yellow Pages v. Asian Jounral Publs., Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999) (holding that evidence of secondary meaning from a partial source possesses very little probative value). With this in mind, the Court turns to Mr. Hicks's declaration. While Mr. Hicks draws correlations between The Jumpitz's website and the JumpArounds's website, this comparison does not illuminate the issue because there is no dispute that The Jumpitz's website appeared in the public before The JumpArounds's website. *See Global Mfr. Group, LLC v. Gadget Universe.com*, 417 F. Supp. 2d 1161, 1171 (S.D. Cal. 2006) ("[A] plaintiff must show its product acquired this meaning *before* the defendant introduced its competing product.").

1    While there is evidence that certain colors are more predominantly used by Nickelodeon in marketing

2    and advertising, there is no evidence in the record to show that the complete "visual system" has

3    appeared anywhere other than on The JumpArounds's website. Moreover, Viacom has presented no

4    evidence in the form of direct consumer testimony or survey evidence that supports Viacom's

5    argument that the "visual system" has acquired secondary meaning. Nor has Viacom established that

6    it exclusively uses the "visual system" or how long the "visual system" has been in place.[4] Indeed,

7    Viacom asserts that its visual system is always evolving with the generations of kids it is attempting

8    to reach.[5] While Viacom does present evidence that Nickelodeon is an established brand in the market,

9    has expended millions of dollars promoting itself, and has a broad base of customers, it has not

10   connected all of these things to the visual system itself.[6]

11          Finally, the Court would be remiss if it did not express its concerns over affording trade dress

12   protection to Nickelodeon's broadly defined "visual system." Children present a unique audience and

13   companies attempting to reach children must figure out how to reach children in light of their limited

14   cognitive abilities. The use of bright, fun colors and whimsical, playful shapes are not quintessential

15   Nickelodeon; they are tools that companies have used for years to reach children. Allowing Viacom

16   to assert a protectable interest in its broadly defined "visual system" would stifle competitors in the

17   field of children's entertainment in a way not contemplated by the Lanham Act. *See Kendall-Jackson*

18   *Winery, Ltd., supra*, 150 F.3d at 1048.

19          For the foregoing reasons, the Court **GRANTS** The Jumpitz's motion and enters judgment in

20   favor of The Jumpitz on Viacom's trade dress infringement claim to the extent it is based on Viacom's

21

22

23   _____

24          [4]Mr. Hicks stated during his deposition that the geographic shapes used in Nickelodeon's "visual system" were derived from the Memphis Design School. (*Hicks Depo.* at 168:11–169:13.)

25          [5]In his deposition, Mr. Hicks stated that Viacom no longer uses the "visual system" on the
26   nick.com website because of a November 2009 redesign. (*Hicks Depo.* at 169:14–171:2.) "We use a much more modern pallet because today, it's about kid modernist because today our design sensibility today is not that of the '80s." (*Id.* at 168:4–7.)

27
28          [6]For example, Mr. Hicks refers to Nickelodeon's investment in advertising for brand promotion, however, the declaration references only advertising that featured the Nickelodeon Splat and Nickelodeon's signature shade of orange. (*Hicks Decl.* at ¶ 8.)

1  asserted "visual system."[7]

2       3.     Damages

3       The Jumpitz contend that even assuming Viacom has viable claims, the Court should enter

4  judgment in favor of The Jumpitz because Viacom has not suffered any damage. The prevailing party

5  in a trademark infringement action is entitled, subject to the principles of equity, to recover (1)

6  defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15

7  U.S.C. § 1117(a). The statute goes on to state:

8         In assessing damages the court may enter judgment, according to the circumstances of
          the case, for any sum above the amount found as actual damages, not exceeding three
9         times such amount. If the court shall find that amount of the recovery based on profits
          is either inadequate or excessive the court may in its discretion enter judgment for such
10        sum as the court shall find to be just, according to the circumstances of the case. Such
          sum in either of the above circumstances shall constitute compensation and not a
11        penalty.

12  Id. In the Ninth Circuit, this provision has been construed to confer "a wide scope of discretion upon

13  the district judge in the fashioning of a remedy for a violation of the [Lanham] Act." *Maier Brewing*

14  *Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968).

15       In its opposition, Viacom concedes that it is not seeking to recover any actual damages. It does,

16  however, contend that it has reserved its right to recover any profits that The Jumpitz have earned

17  from its infringing conduct. (*Opp.* at 23:25–28.) Under the provisions of the Lanham Act, in order for

18  a prevailing party to recover a defendant's profits, the prevailing party must show a likelihood of

19  confusion combined with willful infringement. *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000).

20  The Jumpitz contend that there is no evidence regarding willful infringement. As already noted,

21  Viacom has produced evidence sufficient to create a triable issue of fact on the intent to deceive. This

22  evidence also creates a triable issue of fact on willfulness. Thus, the Jumpitz's argument is without

23

24       [7]As already noted, there is evidence in the record that is probative of whether The Jumpitz
    copied Viacom's Nickelodeon websites. While it is true that evidence of deliberate copying is relevant
25  to a determination of secondary meaning, it is not dispositive of the issue. *See Fuddruckers, Inc.,*
    *supra*, 826 F.2d at 844–45. As the Ninth Circuit has noted, however, "Competitors may intentionally
26  copy product features for a variety of reasons. They may, for example, choose to copy wholly
    functional features that they perceive as lacking any secondary meaning because of those features'
27  intrinsic economic benefits." *Id.* (citations omitted). Here, because it is so clear that Nickelodeon's
    "visual system" is functional and lacks secondary meaning, the Court finds the evidence regarding
28  copying of minimal probative value and insufficient to elevate the asserted "visual system" to a
    protectable interest.

1   merit.

2         4.      <u>Injunctive Relief</u>

3         Viacom is also requesting injunctive relief, which The Jumpitz contend is now moot because

4   it has changed its website. Viacom presents evidence that the offending pages of the website are still

5   available to view. Thus, it does not appear that summary judgment on Viacom's claim for injunctive

6   relief is appropriate at this time. In addition, simply because a party has ceased infringement does not

7   moot a claim for injunctive relief if there is a likelihood that the party is likely to violate in the future.

8   *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) ("The reform of the

9   defendant must be irrefutably demonstrated and total."). The Jumpitz have presented no evidence that

10  they are not likely to violate Nickelodeon's trademark in the future. This is sufficient to permit

11  Viacom to proceed with its request for injunctive relief. Thus, the Court **DENIES** The Jumpitz's

12  motion for summary judgment on Viacom's claim for injunctive relief.

13  **B.**      **Unfair Competition Claims**

14        Finally, The Jumpitz move for summary judgment on Viacom's claim of violation of

15  California's Unfair Competition Law claim on grounds that Viacom has not suffered any damage. In

16  order to have a viable claim under California's Unfair Competition Law, "[a] private plaintiff must

17  make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property

18  caused by unfair competition." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008)

19  (internal quotations omitted). It is undisputed that Viacom has claimed no monetary damage as a result

20  of the alleged infringing conduct, and Viacom does not oppose dismissal of this claim. Accordingly,

21  the Court **GRANTS** The Jumpitz's motion for summary judgment on Viacom's claim under

22  California's Unfair Competition Law.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

**C**ONCLUSION

2      For the reasons set forth herein, the Court **GRANTS IN PART** and **DENIES IN PART**

3 The Jumpitz's motion for summary judgment.

4      **IT IS SO ORDERED**.

5 DATED:  August 13, 2010

6

7                                          Hon. Michael M. Anello
                                           United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28